UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :

vs. : CR No. 06-070

MANUEL A. MENDEZ-HERASME :

DEFENDANT MENDEZ-HERASME'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OFMOTION TO SUPPRESS

In response to the Court's inquiry at the conclusion of the suppression hearing on September 7, 2006, defendant Manuel Mendez-Herasme submits the following Supplemental Memorandum of Law In Support Of Motion To Suppress.

I. Authority Of Defendant Sandoval To Consent To The Search Of The Toyota

The defendant contends that Sandoval could not lawfully consent to the search of the Toyota Avalon because of the fact that defendant Manuel Mendez-Herasme had refused a request to consent to a search of the vehicle. The testimony of Special Agent Forde, on cross examination by defense counsel, was clear that:

a) Task Force Agent Jacobson asked Mr. Mendez for permission to search the Toyota;

b) Mendez' response was to state words to the effect that the vehicle was not his;

c) Special Agent Forde interpreted that statement as a refusal to consent to the search;

d) After Mendez' refusal to consent, Task Force Agent Jacobson then requested permission from Sandoval.

The testimony produced at the hearing clearly demonstrated that Mendez was in sole possession of the Toyota Avalon. He had keys and a wallet that were recovered in the vehicle's glove compartment, indicating that he had some degree of an expectation of privacy in the vehicle. His statement was a clear indication that he did not agree to allow the law enforcement officers to search the vehicle that he was operating. The testimony at the hearing was that Mr. Mendez did not speak english very well and the possibility exists that he understood the request to consent but responded negatively in an inarticulate fashion. Despite the fact that a Pawtucket police officer responded to translate, the government did not present any testimony concerning whether that officer translated the consent request for either Mendez or Sandoval.

In view of defendant Mendez' expression that he would not agree to a search of the vehicle, defendant Sandoval's consent, even if determined to be validly obtained from him, still cannot serve as the lawful basis for the search in light of Georgia v. Randolph, __ U.S. __, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006).

_____In Randolph, the Supreme Court held that " a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant. " 126 S. Ct., at 1528.

_____While Mr. Mendez did not utter the words "No, you cannot search the car", his statement, as interpreted by the experienced officers who were on the scene, clearly qualifies as a refusal to allow the search. See United States v. Sims, 435 F. Supp. 2d 542 ( S.D. MS 2006), where the district court found that when the defendant attempted to slam shut a door, he in fact expressed refusal to the request for consent. 435 F. Supp. 2d, at 545. Mr. Mendez' statement which was taken to be a refusal to consent is more than sufficient to show that he would not allow law enforcement to search the vehicle he had been driving. The fact that, after Mr. Mendez made the statement a request was made of Sandoval shows that the agents believed that Mendez had refused. Significantly, the government did not present the testimony of Task Force Agent Jacobson to contradict Special Agent Forde's interpretation of Mendez' statement of refusal to consent.

Recently, United States District Judge Saylor, of the District of Massachusetts, extended the Randolph decision to a motor vehicle stop, in the case of United States v. Botchway, 433 F. Supp. 2d 163 ( D. Ma. 2006). While the district court upheld the authority of a fellow passenger to consent to a search of a vehicle, the court suppressed the search of a briefcase found in the vehicle.

433 F. Supp. at 172. In Botchway, the court found that it was unreasonable for a State Trooper to assume that the passenger who consented to the vehicle search also had authority over a briefcase found in the vehicle during the consent search. 433 F. Supp, at 172. Finally, in upholding the validity of the consent given by the passenger, the district court noted that "no other occupant objected to the search." 433 F. Supp. at 169.

Recently, the United States Court of Appeals for the Ninth Circuit summarily reversed the denial of a motion to suppress in light of Georgia v. Randolph, *supra*, in United States v. Diaz, ___ F. 3d ___, 2006 App. LEXIS 22168 (9th Cir. 2006). The Ninth Circuit noted that the defendant had "expressly declined to consent to the search of his apartment ". See attached Memorandum Decision. (Emphasis added).

II. Assuming A Valid Vehicle Stop, Assuming Valid Consent, Did Discovery Of Safe Provide Probable Cause For The Arrest Of The Defendants?

The defendant does not concede that the discovery of the safe provides probable cause for arrest. The defendant makes this statement because there was no evidence as to the safe being recently placed in the vehicle. The agents, while very experienced, stopped the vehicles based on a hunch. There was nothing to suggest that the Toyota was being used that evening for drug transportation. Even though a safe was found and, conceding that drug dealers use safes, the police had

nothing to suggest that the safe contained drugs. The missing piece in the puzzle is some particularized evidence of a crime. Had the police seen the safe being loaded into the vehicle, or smelled cocaine, or had a narcotics trained canine provide some indication of the presence of narcotics, then the missing piece would have been supplied.

Additionally, the defendant maintains that he was under arrest prior to the safe being discovered. Although Task Force Agent Jacobson did not testify, the state of the evidence would permit the Court to find that his decision to place Mr. Mendez in handcuffs was based on officer safety concerns. Once Jacobson was able to determine that Mendez did not possess any weapons and none were present in the vehicle, there existed no reason to keep him in handcuffs At that point, there was no other reason to have handcuff Mendez.

Curiously, despite his testimony concerning the potentially dangerous situation presented by the motor vehicle stop, Special Agent Forde did not immediately place Mr. Sandoval into handcuffs. If officer safety was the basis for handcuffing Sandoval, under a Terry stop theory, why not place him in cuffs immediately? Contemporaneously, at least five uniformed Pawtucket Police Officers arrived at the point that Sandoval was being placed in cuffs. The witness statement of Special Agent Forde contains a very telling statement, referred to by defense counsel at oral argument, which arguably demonstrates that the agents had

arrested the defendants. According to Special Agent Forde's Pawtucket Police Department statement, Mendez and Sandoval were told:

> "At this time, both individuals were advised that they were under investigation for possible violations of drug trafficking violations, at which time TFA Jacobson and I received verbal consent to search the black Toyota. "

The statement to the defendants that they were under investigation for "drug trafficking violations", while they are in handcuffs and surrounded by several uniformed Pawtucket Police officers could only be interpreted as showing that they were under arrest. Given that the defendant was arrested prior to the safe being discovered, should the Court determine the discovery of the safe supplied probable cause, the defendants' arrest violated the Fourth Amendment.

III. Was There A Sufficient Basis To Search The Safe Based On Sandoval's Consent?

Defendant Sandoval signed a consent to search form which references a "Save box". Sandoval at an earlier point had denied owning the safe. He had also told the agents that he would allow consent to search the vehicle, but not of the safe. Sandoval specifically stated that the safe belonged to Mendez. Despite these inconsistent statements, the agents asked for consent from Sandoval, knowing that he had denied that the safe was his and had explicitly denied consent to search the safe. Given all of Sandoval's inconsistent actions, it was unreasonable to rely upon his consent to open the safe.

The agents requested to speak to Mr. Mendez and presented him with a waiver of rights form in spanish. The defendant invoked his right to remain silent, a refusal to speak to the officers about anything, including a consent to search. The defendant would again rely upon Georgia v. Randolph, *supra*, for the proposition that the consent of Sandoval, who at best, had equal rights to the safe, was invalid in light of Mendez' refusal to consent, as evidenced by his invoking his right to remain silent.

MANUEL A. MENDEZ-HERASME,
By his attorney,

/s/ Edward C. Roy, Esq. #3029
EDWARD C. ROY, ESQUIRE
Assistant Federal Public Defender
10 Weybosset Street, Suite 300
Providence, RI 02903
( 401 ) 528 - 4281
( 401 ) 528 - 4285

CERTIFICATION

I hereby certify that I served by electronic notification a copy of the within to Sandra R. Beckner, AUSA and by regular mail to Judith Crowell on the 11th day day of September, 2006.

/s/ Edward C. Roy, Esq.