**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 06-070S** |
| | : | |
| **OSCAR R. SANDOVAL-ESPANA** | : | |
| **MANUEL A. MENDEZ-HERASME** | : | |

**GOVERNMENT'S MEMORANDUM OF LAW**

**INTRODUCTION**

At the conclusion of the suppression hearing held on September 7, 2006, the Court asked the parties to brief the following three issues:

(1) Did Defendant SANDOVAL have authority to consent to a search of the Toyota Avalon?

(2) If Defendant SANDOVAL's consent to search was valid, did the discovery of the safe and all other facts known to the agents amount to probable cause to arrest?

(3) Did Defendant SANDOVAL have authority to consent to a search of the safe?

The answer to each of these questions is "yes."

**ARGUMENT**

**I. DEFENDANT SANDOVAL HAD AUTHORITY TO CONSENT TO A SEARCH OF THE TOYOTA AVALON AND THE SAFE**

**A. THE TOYOTA AVALON**

"[P]olice need not seek a warrant where 'voluntary consent has been obtained, either from the individual whose property is

searched, or from a third party who possesses common authority over the premises.'" United States v. Meada, 408 F.3d 14, 20 (1st Cir. 2005) (quoting Illinois v. Rodriguez, 497 U.S. 177, 181 (1990)). "Common authority is . . . not to be implied from the mere property interest a third party has . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." United States v. Matlock, 415 U.S. 164, 171 at n.7 (1974); see Frazier v. Cupp, 394 U.S. 731, 740 (1969)("Since Rawls was a joint user of the bag, he clearly had authority to consent to its search."); Meada, 408 F.3d at 21.

Furthermore, "[e]ven if a person does not in fact have such authority, police may rely on her consent if they reasonably believe that she has such authority." Meada, 408 F.3d at id.. That is, in the absence of actual authority to consent, apparent authority will suffice. See Illinois v. Rodriguez, 497 U.S. 177, 188 (1990).

In United States v. Infante-Ruiz, 13 F.3d 498, 504 (1st Cir. 1994), the Court found that the driver of the vehicle, who had access to defendant's briefcase within, and whose property was co-mingled inside, had authority to consent to a search of the

briefcase.[1] Likewise, in United States v. Davis, 967 F.2d 84, 87 (2nd Cir. 1992), the Second Circuit found that a third-party had authority to consent to a search of a footlocker and the containers within because he and the defendant jointly used the footlocker, although the defendant retained the only key to open the footlocker.

In this case, MENDEZ specifically stated the Toyota was not his vehicle when asked for consent, but he did not refuse to allow agents to search. On the other hand, SANDOVAL immediately assumed responsibility for the vehicle. SA Dan Forde testified SANDOVAL stated he had been using the Toyota for several months, that it was his girlfriend's vehicle, and that he had merely asked MENDEZ to drive the vehicle that evening. SANDOVAL then proceeded to follow MENDEZ in MENDEZ's vehicle, while MENDEZ drove the Toyota.

Moreover, the two defendants statements were not made in a vacuum. SA Forde already knew that SANDOVAL, who was driving MENDEZ's vehicle, had been following MENDEZ, who was driving the Toyota. This fact supports the believability of SANDOVAL's statement regarding his and MENDEZ's use of the Toyota. Furthermore, SA Forde had seen the vehicle leave the residence of

[1]In Infante-Ruiz, 13 F.3d at 504-05, the Court found that the driver had authority to consent to the search of defendant's briefcase given drvier's joint use and access to the briefcase; however, the Court found that drvier did not consent to a search and thus, nonetheless suppressed the evidence.

the two defendants, and knew from the cooperator that the defendants' used the Toyota in their narcotics trafficking.[2]

Certainly, based upon the statements of the defendants; the information of the corroborated, reliable cooperator; the observations of the agents that evening, specifically that the defendants were traveling in tandem in a technique often utilized in narcotics trafficking; and, the training and experience of the agents involved, SANDOVAL had authority to consent to a search of the Toyota, and at a minimum, SA Forde was reasonable in believing that SANDOVAL had such authority. See Rodriguez, 497 U.S. at 188.

**B. STANDING**

If the Court were to find that SANDOVAL did not have authority to consent to a search of the Toyota, then it necessarily follows that he did not have a reasonable expectation of privacy in the Toyota and cannot raise a challenge under the Fourth Amendment. It would be inconceivable under the law for someone to have Fourth Amendment standing, yet be unable to waive his Fourth Amendment rights with respect to the vehicle. Thus, if the Court finds that SANDOVAL does not have authority to consent to the search of the Toyota, then the Court should also

[2] As discussed in previous briefs and at the hearing, the cooperator was not only a reliable source, and a former witness in the grand jury, but had also been heavily corroborated.

find that SANDOVAL cannot challenge the search as a violation of Eva Lopez's[3] rights.

In a previous brief, the government raised the issue of MENDEZ's standing to challenge the search of the Toyota. MENDEZ's statement when asked for consent, namely that the vehicle was not his, manifests a lack of standing. See United States v. Sanchez, 943 F.2d 110, 113 (1st Cir. 1991).

In Sanchez, 943 F.2d at 113, the defendant, like MENDEZ, was driving the vehicle with the permission of the boyfriend of the owner of the vehicle. The First Circuit found in that case that the defendant, who "'at best . . . was operating the vehicle with the authority of a person who himself had been given the authority to operate the vehicle by somebody else,'" did not have a reasonable expectation of privacy in the vehicle, even though the defendant was alone. Id..

The case at hand, however, more firmly supports a finding of that MENDEZ did not have a reasonable expectation of privacy in the Toyota because MENDEZ was not alone. He was being followed by SANDOVAL, who had authority from Ms. Lopez to use the vehicle. SANDOVAL, the individual with direct authority from the owner to use the vehicle gave MENDEZ permission to use it, and accompanied MENDEZ, albeit in a "chase" car, during his use of the Toyota. That is, unlike the defendant in Sanchez, MENDEZ's use was

[3] SANDOVAL's girlfriend and the owner of the vehicle.

supervised by one with authority to use the Toyota. Moreover, even if MENDEZ had standing, his statement and subsequent silence in light of SANDOVAL's affirmative consent and the agents' search in his presence, waives any right he might have had to withhold consent.

**C. THE SAFE**[4]

As discussed above, joint use of property provides an individual with authority to consent to a search of the property. See Matlock, 415 U.S. at 171, n.7. In this case, SA Forde testified that SANDOVAL claimed to use the safe and that SANDOVAL had a key to the safe. Although the safe could not be opened without the code that SANDOVAL supposedly could not recall, such a fact does not dissipate SANDOVAL's authority to consent to a search. See Davis, 967 F.2d at 87. Based upon SANDOVAL's joint use of the safe and possession of a key to it; the information from the cooperator; and, the observations of the agents that evening, most importantly, SANDOVAL's following the Toyota carrying the narcotics, SANDOVAL had actual authority to consent to a search of the safe, and certainly apparent authority to consent to the search.

[4]The government continues to maintain that the automobile exception to the warrant requirement allowed the agents to search the safe, absent valid consent. The agents had probable cause to arrest defendants and to believe the vehicles contained contraband. Accordingly, the agents were authorized to search any location within the vehicles where contraband could be located.

## II. AGENTS HAD PROBABLE CAUSE TO ARREST THE DEFENDANTS

"[P]robable cause is a flexible, common-sense standard." Brown v. Texas, 460 U.S. 730, 742 (1983) (probable cause existed when experienced police officer, who knew narcotics were frequently transported in party balloons, inferred that party balloon observed in plain view contained narcotics). The government need only "show that, at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." United States v. Torres-Maldonado, 14 F.3d 95, 105 (1st Cir. 1994) (probable cause to arrest existed where agents observed defendants engaging in a what appeared to be a drug deal, found defendants the next day in an area which had recently been searched yielding narcotics and where defendants admitted knowing individuals who had been arrested earlier in the day); see United States v. Funches, 327 F.3d 582, 587 (1st Cir. 2003) (probable cause to arrest defendants because experienced narcotics agents observed behavior consistent with drug transactions that may have seemed innocent to a layperson).

In the case at hand, agents had a warrant supporting the arrest of SANDOVAL and a plethora of facts supporting the arrest of both defendants for narcotics trafficking. Specifically, upon discovery of the safe, agents were aware of the following:

(1) A known, reliable cooperator had provided agents with specific information that defendants possessed five kilograms of cocaine, and used a Toyota sedan with license OC-177 to transport cocaine;

(2) The FBI received similar information regarding narcotics trafficking occurring at defendants' residence;

(3) Agents were caught at the residence, in the middle of the night, leading an experienced agent to conclude that the drugs would likely be moved that evening;

(4) Agents observed the dark, pickup truck parked near the detached garage, drive without lights to the front of the house, backup to the door, the occupant enter and exit the residence, and then follow the Toyota that was described by the cooperator;

(5) The agents observed the vehicles travel in a formation consistent with a tactic utilized by narcotics traffickers in the middle of the night;

(6) During the traffic stop the agents observed the nervousness of both MENDEZ and SANDOVAL;

(7) Defendants gave inconsistent stories regarding their knowledge of each other and of the vehicles, yet the agents knew that the defendants were the very people named and described by the cooperator;

(8) MENDEZ stated he was headed to Prospect Heights, a known drug trafficking area, and the vehicle stop occurred close to Prospect Heights;

(9) The safe was found in the trunk of SANDOVAL's girlfriend's Toyota that was being driven by MENDEZ;

(10) The agents knew from experience that a safe is commonly used by drug dealers to store their merchandise, cash and firearms;

(11) The safe was dented and scratched and appeared to be hastily thrown in the trunk of the Toyota;

(12) The agents knew SANDOVAL, an illegal alien with an outstanding administrative warrant, was one of the drivers, that SANDOVAL gave a false identification, and, the immigration status of MENDEZ was still unknown.

Based upon the facts known to the agents at the time of arrest, they possessed probable cause to believe both defendants were engaged in narcotics trafficking.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that this Honorable Court deny the defendants' Motion to Suppress Evidence.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U.S. Attorney

Certificate of Service

I hereby certify that on the 11th day of September, 2006, I caused a copy of the within Government's Memorandum to be e-filed and served via e-file on Judith Crowell, Esq., 128 Dorrance Street, Fourth Floor, Providence, RI 02903 and on Edward C. Roy, Assistant Federal Public Defender, 10 Weybosset Street, Suite 300, Providence, RI 02903.

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U.S. Attorney